UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE: SHERI SPEER : CASE NO. 3:16-cv-1665(RNC)

## RULING AND ORDER

Sheri Speer, a debtor in bankruptcy, appeals an order of the Bankruptcy Court denying her motion to enforce an oral settlement agreement she claims to have reached with her largest creditor, Seaport Capital Partners, LLC ("Seaport") during a hearing in Connecticut Superior Court on April 3, 2014 ("the April 3 hearing"), approximately one month before the commencement of the bankruptcy proceeding. At the April 3 hearing, the parties reported that they believed they had reached an agreement to settle nine foreclosure actions brought by Seaport against Ms. Speer. It is undisputed that no settlement was finalized prior to the commencement of the bankruptcy case. For reasons that follow, the order is affirmed.

Ms. Speer filed her motion to enforce the alleged settlement agreement on June 26, 2016, approximately two years after the bankruptcy case began. Prior to that time, she had engaged in unusually contentious litigation with Seaport in the Bankruptcy Court without bringing the alleged settlement to the Court's attention.

The Bankruptcy Court conducted a hearing on the motion on August 11, 2016.[1] Ms. Speer offered no evidence other than the transcript of the April 3 hearing. Mot. Enforce Settlement Ex. A ("Super. Ct. Tr."), Apr. 3, 2014 (ECF No. 11-1). Seaport offered the testimony of its counsel at the time of the April 3 hearing, Donna Skaats; emails sent by Ms. Speer to Ms. Skaats in the days after the hearing; and a transcript of a hearing in the Superior Court on May 14, 2014 ("the May 14 hearing"). Mem. Decision & Ruling Den. Mot. Enforce Settlement ("Mem. Decision") 7-8, Doc. 239, Adv. Proc. No. 15-02031(AMN) (ECF No. 11-1 at 100-101). Ms. Skaats testified that although she believed the parties had reached an agreement to settle the foreclosure actions when she reported the proposed settlement to the Superior Court at the April 3 hearing, some terms remained open. She further testified that Ms. Speer backed away from the settlement the next day and no settlement agreement was ever reached.

On September 19, 2016, the Bankruptcy Court issued a written ruling denying Ms. Speer's motion. Mem. Decision (ECF No. 11-1 at 94-110). The Court found that "[n]either Seaport nor Speer intended to be bound to a settlement agreement of the [foreclosure actions] absent a writing . . . ." Id. at 16 (ECF

---

[1] At the outset of the hearing, Ms. Speer's counsel conceded that there was no settlement of the state court matters. See Bankr. Tr. 10:11-12, 12:8, 17:15-16, Apr. 11, 2016 (ECF No. 12-1). Even so, he asked the Bankruptcy Court to find that an enforceable settlement agreement was reached at the April 3 hearing.

2

No. 11-1 at 109). In addition, the Court found that "[t]here were numerous, material terms that had not been agreed to at the April 3, 2014 hearing, including valuations of properties and amount of debts." Id. at 17 (ECF No. 11-1 at 110).

Ms. Speer argues that the Bankruptcy Court clearly erred in failing to find that the parties intended to enter into a binding oral contract at the April 3 hearing. I disagree.

The testimony of Ms. Skaats, which the Bankruptcy Court credited, is supported by the transcript of the April 3 hearing. The transcript shows that when the parties reported that they "believed" they had reached an agreement, the Judge recognized that settling the foreclosure actions would require a written agreement. Super. Ct. Tr. 3:25-4:3, 7:4-16 (ECF No. 11-1) ("No, I think I need something in writing . . . that will be filed."). The Judge asked the parties to provide him with the "skeleton" of their proposed agreement. Id. at 8:1-2. The ensuing colloquy confirmed that more work needed to be done to reach a final agreement. See, e.g., id. 8-9 (discussion concerning the amount of debt on properties, with the Judge concluding "You don't have to give me the numbers now."); id. at 11:8-11 (defendant Teiger's attorney requesting that the Court "order that the receiver provide me with all reports . . . including statements of income and expense. . . ." within a month). The parties explained to the Judge that in order for Ms. Speer to transfer deeds in lieu

3

of foreclosure, as required by the proposed settlement with regard to some properties, it would be necessary to obtain updated valuations of the properties so accurate valuations could be reported to the Internal Revenue Service as required by law. Ms. Speer told the Judge that she hoped to have her work on the settlement completed by the following Friday. Id. at 25:21-23. The Judge urged the parties to keep working. Id. at 31:15-32:8 (asking about the parties' availability on Monday morning to let the Judge know when "this is going to be done").[2] Ms. Speer's emails to Ms. Skaats in the days after the April 3 hearing show that she promptly backed away from the proposed settlement. The transcript of the May 14 hearing shows that a settlement agreement covering all essential terms was never reached. Mem. Decision 16 (ECF No. 11-1 at 109).

Ms. Speer argues that the case should be remanded so the Bankruptcy Court can apply the "Winston factors" used to determine whether parties intended to be bound to an oral contract in the absence of a fully executed writing. See Winston

---

[2] In her reply brief, Ms. Speer contends that the Court's canvass of the parties during the April 3 hearing compels a finding that the parties intended to be bound to an oral contract containing the terms they outlined to the Judge. In conducting the canvass, the Court referred to the "proposed" agreement and neither party stated that they intended to be bound in the absence of a fully executed document. Super. Ct. Tr. 28:23-24. After considering the hearing transcript in its entirety, the Bankruptcy Court reasonably found that the parties had no such intent. Mem. Decision 16 (11-1 at 109).

4

v. Medifare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985).[3] She contends that the Bankruptcy Court erred in failing to explicitly consider these factors. There is no need for a remand. As Winston itself clearly states, the key issue is whether the parties intended to be bound in the absence of a writing. Id. The Bankruptcy Judge focused on this issue and specifically found that neither party intended to be bound by a settlement of the foreclosure actions without a written agreement. The Court's finding is well-supported by the parties' words and actions during and after the April 3 hearing.[4]

Accordingly, the order is affirmed. The Clerk may close the appeal.

So ordered on this 1st day of February 2018.

/s/ RNC
Robert N. Chatigny
United States District Judge

---

[3] The factors are "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." Id.

[4] If this case were remanded to give the Bankruptcy Court an opportunity to explicitly assess each of the Winston factors, I have no doubt the result would be the same. The Court found that the parties did not intend to be bound without a final written agreement; it is undisputed that there was no partial performance; the Court found that material terms remained open as of the April 3 hearing; and the proposed settlement agreement discussed at the April 3 hearing is the type of contract usually committed to writing.

5